**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| JUDY CASSELLA, | No. CV-08-01196-PHX-MHM |
| Plaintiff, | **ORDER** |
| vs. | |
| MINERAL PARK, INC., | |
| Defendant. | |

Currently before this Court are Defendant Mineral Park, Inc.'s Motion For Partial Summary Judgement, (Dkt. #75), and Plaintiff Judy Cassella's Motion to Strike. (Dkt. #78). After reviewing the pleadings, and determining that oral argument is unnecessary, the Court issues the following Order.

**I. PROCEDURAL HISTORY**

This case concerns claims of racial discrimination, gender discrimination, and retaliation in the workplace brought pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, and the Civil Rights Act of 1866, 42 U.S.C. § 1981 (as amended). Plaintiff filed her complaint on June 27, 2008, (Dkt. #1), but filed a Notice re Errata and Motion to File a Substitute Corrected Complaint on July 3, 2008. (Dkt. #4). This Court granted Plaintiff's Motion on July 17, 2008, and on August 11, 2008, Defendant answered Plaintiff's Complaint. (Dkt. #5). After a protracted period of discovery, during which this Court

granted two extensions of time, (Dkt. #48; Dkt. #65), on August 21, 2009, Defendant filed its Motion for Partial Summary Judgement (Dkt. #75), and accompanying Statements of Facts. (Dkt. #76). Plaintiff filed her Response in Opposition to Defendant's Motion for Partial Summary Judgment on September 25, 2009. (Dkt. #78). On the same day, Plaintiff, in a single document, also filed her Statement of Facts in Support of her Response and Motion to Strike the Affidavits of Barn Brunssen and Alexis Burns. (Dkt. #79). On October 13, 2009, Defendant filed its Reply in Support of its Motion for Partial Summary Judgement and a Supplemental Statement of Facts in Support of its of its Motion for Partial Summary Judgement and Reply (Dkt. #83).

## II. FACTUAL BACKGROUND

Defendant's Motion for Partial Summary Judgement does not challenge Plaintiff's claims of racial discrimination, gender discrimination, or retaliation in the workplace. Instead, it asks this Court to hold that Plaintiff, should she prevail on her underlying claims, is not entitled to economic damages in the form of backpay because the evidence on record cannot support a finding that Plaintiff fulfilled her duty to mitigate those damages. (Dkt. #75, p. 6). Accordingly, the facts pertinent to Defendant's motion are limited, encompassing only the events relevant to the issue of mitigation. Unless otherwise noted, the following facts are undisputed.

Mineral Park is a surface copper, silver, and molybdenum mine that operates twenty-four hours per day, seven days per week. (Defendant's Statement of Facts (DSOF), p.1, ¶¶1–2). Prior to her employment at Mineral Park, Plaintiff worked primarily as a horse trainer and jockey, holding various positions in this industry between 1971 and 2002. (see Id. at p.2–3, ¶¶11–13). Mineral Park hired Plaintiff on March 1, 2004, to answer phones, but she ended up performing other duties as well, including pulling files, making sure bills were paid, ordering parts, and taking care of visitors to the office. (Id. at ¶3–5). Eventually, Defendant offered Plaintiff a position on the "Leach Crew," working in the Mineral Park field. (Id. at ¶6). In that capacity, Plaintiff received training on quads, welding, fork trucks, chainsaws, generators, 950 loaders, JCB forklifts, and the operation of haulage trucks, and

her responsibilities included, among other things, dumping and flushing; stacking, cutting, fusing and welding pipes; driving loaders, forklifts, and dump trucks. (Id. at ¶9). Mineral Park terminated Ms. Cassella's employment on December 30, 2005. (Id. at ¶10).

Following her termination, Plaintiff searched for employment in Chloride, Golden Valley, and Kingman Arizona. (Id. at ¶16). As part of that search, during the first one-third to one-half of 2006, Ms. Cassella went to the Kingman area Department of Economic Security ("DES") office about once weekly, to review job openings posted by Mohave County or Laughlin area employers. (Id. at ¶19). About halfway through 2006, Plaintiff's visits to the DES became less frequent, and she does not recall going to DES in 2007 and 2008, but has been back on two occasions in 2009. (Id. at ¶20). Ms. Cassella's interaction with DES resulted in the filing of a single job application for a position as maintenance manager at a fairgrounds. (Id. at ¶23). In her deposition, however, Ms. Cassella states that the reason she filed only one application was that she did not qualify for almost any of the jobs posted with DES. (Id. at ¶24). In addition to her efforts with DES, Plaintiff also sought employment by driving through Kingman, Arizona, looking for 'help wanted' signs, or simply entering businesses and asking for employment. (Id. ¶26). To wit, Plaintiff states that she asked the owners of "Yesterdays"restaurant in Chloride, Arizona, if they needed a waitress, but was rejected. (Id. at ¶28). During her entire job search, however, Ms. Cassella submitted only two applications for employment. (Id. at ¶27).

In or around June or July of 2006, Plaintiff once again began training horses, billing clients under the name Judy Cassella Racing. (Id. at ¶31). As a trainer, Ms. Cassella spent approximately six to eight hours per day training and feeding horses, cleaning their pens, and medicating and shoeing them. (Id. at ¶33). The parties disagree, however, concerning how this decisions should be characterized. Defendant argues that Ms. Cassella reentered the horse training business and, in so doing, abandoned her job search. Plaintiff, on the other hand, contends that she was forced to resume her training activities in order to mitigate damages, as she had been unable to find other work. Additionally, until August, 2007, Ms. Cassella spent one to two hours per day taking care of her elderly mother. (Id. at ¶37).

1  **III. Motion to Strike**

2      **A. Legal Standard**

"It is well settled that only admissible evidence may be considered by the trial court in ruling on a motion for summary judgment." Beyene v. Coleman Sec. Serv., Inc., 854 F.2d 1179, 1181 (9th Cir. 1988). In support or opposition to summary judgment, "affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein." FED.R.CIV.P. 56(e). Conclusory and speculative testimony in affidavits and moving papers is insufficient to raise genuine issues of fact and to defeat summary judgment. Thornhill Publ'g Co., Inc. v. GTE Corp., 594 F.2d 730, 738 (9th Cir. 1979). However, "[a]t the summary judgment stage, [courts] do not focus on the admissibility of the evidence's form. [Courts] instead focus on the admissibility of its contents." Fraser v. Goodale, 342 F.3d 1032, 1036 (9th Cir. 2003) (citation omitted).

    **B. Discussion**

Plaintiff moves to strike the declaration of Alexis Burns and supporting materials, (DSOF, ex.6, 7), on the grounds that Defendant failed to disclose Ms. Burns as a witness, that she does not have personal knowledge of the labor market in the Kingman area, and was not disclosed as an expert witness. (PSOF, p.5, ¶47). Additionally, Plaintiff also moves to strike the affidavit of Barb Brunssen, (Id. at ex.1), on the grounds that Ms. Brunssen does not have personal knowledge of the labor market in the Kingman, Arizona, area and was not disclosed as an expert witness. Neither of Plaintiff's contentions have merit.

    **I. Mrs. Brunssen**

Plaintiff alleges Ms. Brunssen's affidavit contains opinion testimony which is not within her personal knowledge, and for which she is unqualified as an expert to give. This argument, however, mischaracterizes the nature and purposes of Ms. Brunssen's affidavit. The affidavit merely recounts the steps Ms. Brunssen took in collecting copies of classified ads that ran on Fridays in the *Kingman Daily Miner* between January 2006 and December 2007; it does not contain any opinion testimony. Accordingly, this Court agrees with

1 Defendant; the declaration merely lays a foundation for and seeks to authenticate the
2 classified ads that Ms. Brunssen collected. While it is true that Defendant has made
3 assertions based on the content of the classified adds, they are not based on Ms. Brunssen's
4 affidavit.

### 2. Ms. Burns

Plaintiff makes the same arguments regarding Ms. Burn's declaration and its supporting material; a list of job postings composed of jobs offered through DES and *Kingman Daily Miner* classified ads. Ms. Burn's declaration, like Ms. Brunssen's, does not contain impermissible opinion testimony. Instead it explains the process she employed—searching through certain DES and the *Kingman Daily Miner* classified ads and pulling out entry-level receptionist, driver, and restaurant or animal related jobs—in creating a list of job postings. Based on this list, Defendant argues their were numerous suitable jobs that would have mitigated Plaintiff's damages. Taken out of context, Ms. Burn's description and repeated mention of these types of positions as "Cassella Appropriate Positions" appears to be opinion testimony. Read properly, however, the phrase "Cassella Appropriate Positions" is merely shorthand for referring to the categories of jobs her employer ordered her to extract and summarize. It does not reflect her personal opinion or conclusion that Ms. Cassella was, in fact, qualified for the positions. Accordingly, she is merely a foundation witness who was properly disclosed as such in Defendant's Initial Disclosure Statement, Plaintiff's Motion to Strike Ms. Burn's affidavit is denied.

The Court notes, however, that any conclusions it draws based on these job postings will eminate from the posting's themselves, not Ms. Burns interpretation of them. While it is true that Defendant did not include original copies of the adds in its initial filing, this defect has been remedied by Defendant's supplemental statement of facts and accompanying exhibits, to which Plaintiff has not objected, and which includes all of the classified ads on which Ms. Burns declaration and summary is based. And, the Court finds that reliance on such evidence at summary judgement is proper, as commercial publications, such as newspapers, and the DES Employer Postings, are likely admissible under Federal Rules of

Evidence 902(6) and 902(4) respectively. See FED. R. EVID. 902(6) (stating that newspapers and periodicals are self authenticating); Id at 902(4) (stating that certified copies of public documents are self authenticating).

## IV. SUMMARY JUDGEMENT

### A. Legal Standard

Summary judgment is appropriate when the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED.R.CIV.P. 56(c). The moving party bears the initial burden of establishing the absence of any genuine issue of material fact; the moving party must present the basis for its summary judgment motion and identify those portions of the record that it believes demonstrate the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986); Devereaux v. Abbey, 263 F.3d 1070, 1076 (9th Cir. 2001).

A material fact is one that might affect the outcome of the case under governing law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). In addition, in order to preclude summary judgment, a dispute about a material fact must also be "genuine," such that a reasonable jury could find in favor of the non-moving party. Id.; Anheuser -Busch, Inc. v. Natural Beverage Distrib., 69 F.3d 337, 345 (9th Cir. 1995). In determining whether the moving party has met its burden, the Court views the evidence in the light most favorable to the nonmovant. Allen v. City of Los Angeles, 66 F.3d 1052, 1056 (9th Cir. 1995). The Court may not make credibility determinations or weigh conflicting evidence. Musick v. Burke, 913 F.2d 1390, 1394 (9th Cir. 1990). Further, the Court must draw all reasonable inferences in favor of the nonmovant. Gibson v. County of Washoe, 290 F.3d 1175, 1180 (9th Cir. 2002).

If the moving party meets its burden with a properly supported motion for summary judgment, then the burden shifts to the non-moving party to present specific facts that show there is a genuine issue for trial. Fed.R.Civ.P. 56(e); Matsushia Elec. Indus. Co. v. Zenith Radio, 475 U.S. 574, 587 (1986). The nonmovant may not rest on bare allegations or denials

in his pleading, but must set forth specific facts, by affidavit or as otherwise provided by Rule 56, demonstrating a genuine issue for trial. Id.; Anderson, 447 U.S. at 248-49. Conclusory allegations, unsupported by factual material, are insufficient to defeat a motion for summary judgment. Taylor v. List, 880 F.2d 1040, 1045 (9th Cir. 1989). In sum, "there is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." Anderson, 477 U.S. at 249.

**B. Discussion**

**1. Failure to Mitigate**

Under section 2000e-5 of Title VII, an award of damages in the form of backpay must be reduced by the "[i]nterim earnings or amounts earnable with reasonable diligence by the person or persons discriminated against." 42 U.S.C. § 2000e-5(1)(g). Accordingly, the Ninth Circuit has held that "[s]ection 2000e-5 imposes upon plaintiffs seeking back pay a duty to mitigate damages by seeking alternative employment with 'reasonable diligence.'" Caudle v. Bristow Optical Co., Inc., 224 F.3d 1014, 1020 (9th Cir. 2000). The burden of proving a plaintiff's failure to mitigate damages falls on the defendant. Sias v. City Demonstration Agency, 588 F.2d 692, 696 (9th Cir. 1978). To meet this burden, a defendant must establish: "(1) that the damage suffered by plaintiff could have been avoided, I. e. [sic] that there were suitable positions available which plaintiff could have discovered and for which [s]he was qualified; and (2) that plaintiff failed to use reasonable care and diligence in seeking such a position." Id.

**a. The availability of suitable positions**

Defendant alleges that there were hundreds of suitable employment opportunities that Plaintiff could have discovered.. In support of its position, Defendant has provided this Court with copies of 566 employment opportunities posted with DES between January 2006 and June 2009 for which it claims Plaintiff was qualified. Defendant's belief in the suitability of these positions is predicated solely on its characterization of them as entry level receptionist, driver, restaurant, and animal-related positions. Based on the same reasoning, Defendant has also provided the Court with 184 classified ads placed in the *Kingman Daily*

*Miner* between January 2006 and December 2007 that contain jobs it believes would have been suitable for Ms. Cassella. Plaintiff denies Defendant's characterization of these jobs as suitable, but has not offered any reasons for so doing.

A replacement job is suitable if it is substantially equivalent. Substantially equivalent employment is that "which affords virtually identical promotional opportunities, compensation, job responsibilities, working conditions, and status as the position from which the Title VII claimant has been discriminatorily terminated." Sellers v. Delgado College, 902 F.2d 1189, 1193 (5th Cir. 1990) (internal quotations omitted). A "claimant need not go into another line of work, accept a demotion, or take a demeaning position," to mitigate damages. Ford Motor Co. v. E. E. O. C., 458 U.S. 219, 232 (1982); see N. L. R. B. v. Madison Courier, Inc., 472 F.2d 1307, 1319 (1972) ("A discriminatee need not seek or accept employment which is 'dangerous, distasteful or essentially different' from his regular job.").

As a preliminary matter, many of the allegedly suitable employment opportunities identified by Defendant would not have allowed Ms. Cassella's to remain in the same line of work or afforded her identical job responsibilities. Mineral Park is a surface copper, silver, and molybdenum mine. And although she began her tenure at Mineral Park as an officer worker, at the time of her firing, Plaintiff worked on the "Leach Crew," in the Mineral Park field, and her responsibilities included, among other things, dumping and flushing; stacking, cutting, fusing and welding pipes; driving loaders, forklifts, and dump trucks. Her position with Mineral Park, then, cannot be said to be in the same line of work as the receptionist, restaurant, and animal-related positions Defendant posits as suitable. The fact that some of these positions relate either to Plaintiff's previous job experiences or employment opportunities Plaintiff sought after being terminated appears irrelevant; the Mineral Park job is the relevant comparator. Only the driver-related positions appear to be related to Plaintiff's job responsibilities at Mineral Park. Yet, this category is over generalized, as the mere fact a position involves driving does not in and of itself. It is doubtful that a flower-delivery job, for example, would be substantially equivalent to one

involving the operation of loaders, forklifts, and dump trucks merely because it involves driving.

To the extent, however, that Defendant's examination of the DES postings and *Kingman Daily Miner* classified section may have resulted in the identification of substantially equivalent jobs, Defendant has failed to specifically bring them to the Court's attention, let alone explain how those positions have virtually identical promotional opportunities, job responsibilities, or working conditions as Ms. Cassella's job with Mineral Park. In failing to so do, Defendant has not met its burden. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (holding that the moving party bears the initial burden of establishing the absence of any genuine issue of material fact; the moving party must present the basis for its summary judgment motion and identify those portions of the record that it believes demonstrate the absence of a genuine issue of material fact). Ultimately, while this Court agrees that the sheer quantity of jobs identified by Defendant strongly suggests the availability of at least some appropriate employment opportunities, it cannot conclude as a matter of law that Defendant has met its burden as to this element based on mere probability alone.

### b. The use of reasonable diligence

Defendant also alleges that Plaintiff has failed to use reasonable diligence in her job search. The reasonableness of Ms. Cassella's diligence in seeking new employment, "should be evaluated in light of the individual characteristics of the claimant and the job market." Rasimas v. Michigan Dept. of Mental Health, 714 F.2d 614, 624 (6th Cir.1983); see E.E.O.C. v. Pape Lift, Inc., 115 F.3d 676, 684 (9th Cir.1997) ("[W]e think it more appropriate to tailor the reasonableness inquiry to the particular characteristics of the injured plaintiff."). In urging that this element of the mitigation test cannot, as a matter of law, be met, Defendant separates Ms. Cassella's post-termination conduct into two discreet time periods: (1) the time of her firing until she began training horses (approximately January 2006 to June 2006); and (2) from the time she started training horses until the present. For the sake of clarity, and

to fully address Defendant's contentions, the Court will consider each of these periods separately.

### 1. January 2006 to June 2006

During this period of time, there is sufficient evidence in the record to support a jury finding that Ms. Cassella engaged in a reasonably diligent job search. First, and most importantly, its undisputed she made weekly trips to the DES for the purpose of finding employment. Furthermore, during her deposition Ms. Cassella stated that she prepared a resume and had it posted at DES. (Dkt. #76, ex.5, at 46). Defendant makes much of the fact that Plaintiff's visits to DES resulted in the filing of only one application. This fact, however, must be placed in the relevant context, namely that Defendant has not demonstrated the number of substantially equivalent employment opportunities available through DES during this period. It is possible that only one such position was available between January 2006 and June 2006, rendering Plaintiff's conduct perfectly reasonable. In fact, Ms. Cassella testified that she did not qualify for many of the available jobs and, when she did identify a desirable position, DES staff members often told her she lacked the requisite qualification, and, as a result, she did not submit an application (Id. at 46–47, 51).

During this time-frame, the record also shows that Ms. Cassella sought employment through methods other than the filing of applications. She repeatedly asked the proprietors of Yesterday's Restaurant for a waitress position, but was rejected; inquired about employment at Bill Hamilton's cattle ranch, but only received temporary work; and unsuccessfully requested a job with two local animal feed stores, Stockton Hill and Wild Oats. (Id. at 51–52). Defendant implicitly, if not explicitly, suggests that inquiring about work in person mitigates against a conclusion Plaintiff engaged in a reasonably diligent job search. The Court does not agree. While the filing of an application is, perhaps, the best recognized manner of applying for a job, it is not the only acceptable method by which to seek employment, and, in the case of this Plaintiff, may have been perfectly reasonable. Likewise, Plaintiff's alleged failure to search the *Kingman* classified adds, search for employment on the internet, or post her resume online may also have been reasonable for this

1 Plaintiff. First, Defendants has introduced no authority supporting the proposition that
2 backpay plaintiffs must take advantage of every and all resources available to them. While
3 the Court agrees that utilizing internet and newspaper resources may have aided Plaintiff's
4 job search, the standard is reasonable, not maximum, diligence. Second, Defendant's claims
5 concerning the internet presuppose that Plaintiff had both access to the internet and the skills
6 to successfully utilize it. While no evidence has been introduced as to access—indeed,
7 Defendant seems to assume that everyone has access to the internet, an assumption that is not
8 accurate—the record shows that Mineral Park moved Plaintiff from the office to the field
9 because she did not possess computer skills. Accordingly, it is possible that Plaintiff did not
10 possess the requisite ability to use the internet in her job search. Because this Court must
11 determine reasonableness in light of Plaintiff's individual characteristics and because
12 Defendant has the burden of proof, it will not find Ms. Cassella's failure to utilize the internet
13 in her job search rendered her job search insufficient. In sum, based on the evidence on the
14 record, this Court cannot conclude as a matter of law that Plaintiff did not exercise
15 reasonable diligence in seeking employment between January 2006 and June 2006.

### 2.     June 2006 to Present

17 As to the second period of time—June 2006 to Present—Defendant claims that
18 Plaintiff forfeited any entitlement to backpay when she removed herself from the labor
19 market by reentering the horse training business. In Rivera v. NIBCO, Inc., the Ninth Circuit
20 held that "voluntary removal from the labor market removes [a] backpay claim." 384 F.3d
21 822, 833 (9th Cir. 2004). A plaintiff is removed from the labor market when he is not
22 "ready, willing and legally capable of performing alternate work at the commencement and
23 through the backpay period." Id.; see Miller v. Marsh, 766 F.2d 490, 492 (11th Cir. 1985)
24 (upholding district Court's finding that plaintiff removed herself from the labor market by
25 attending law school because she was not "ready, willing, and available for full-time
26 employment"). The question this Court must consider, then, is whether Plaintiff's return to
27 horse training constituted her removal from the labor market. Plaintiff claims that it does not,

1 characterizing her horse training business as an attempt to earn money, and in so doing, mitigate her lost wages.

The Parties have not made the Court's job easy, as neither has provided case law from comparative cases. That being said, a couple of things are clear. First, accepting a new job does not appear to bar an award of backpay. Section 2000e-5 of Title VII explicitly states that a backpay award may be reduced by either "[i]nterim earnings or amounts earnable with reasonable diligence by the person or persons discriminated against." 42 U.S.C. § 2000e-5(1)(g). If becoming employed removed a person from the labor market, it would preclude recovery of backpay. This cannot be, however, as such a conclusion contradicts the plain language of section 2000e allowing for a backpay award reduced by a plaintiff's interim earnings. See also EEOC v. Ford Motor Co., 645 F.2d 183 (4th Cir.1981) (holding that plaintiffs that entered a training program did not exit the labor market because the training program closely resembled employment in that wages were paid for the time spent in training); U.S. v. Wood, Wire and Metal Lathers, Int'l. Union Local 46, 328 F.Supp. 429, 443 (S.D.N.Y.1971) (plaintiffs entitled to backpay where they could prove that they mitigated damages by working on alternate jobs).

Secondly and relatedly, Plaintiff's decision to become self-employed is not the type of action generally considered to remove one from the labor market. For example, in Miller, the Eleventh Circuit upheld a lower court's ruling that plaintiff removed herself from the job market by becoming a full-time law student. Similarly, the Ninth Circuit has cited with approval the case of Stevens v. Tennessee Valley Authority, where the Sixth Circuit found that a plaintiff was not entitled to backpay because he was unable to work due to national guard duties. Rivera, 384 F.2d at 833 (citing Stevens v. Tennessee Valley Authority, 805 F.2d 1036, 1986 WL 18134, *6 (6th Cir.1986)). Attending law school full-time and serving in the military are not fungible commitments or merely placeholder activities. A person in either of those positions are not in the labor market as they are not actively seeking, nor can they accept, full time employment. A civilian employee, unlike a soldier or full-time law student, is in the labor market, as businesses often hire employed persons away from other

companies, and such persons, with few exceptions, are capable of ending their employment in favor of another job opportunity. In the instant case, Plaintiff states that her current self-employment is merely a means to make money until she finds a suitable job. The Court will take Plaintiff at her word, and cannot, therefore, find that she has voluntarily removed herself from the labor market.

The facts show, however, that an injury may have removed Plaintiff from the labor market, as "physical inability to work bars a backpay claim." Rivera v. NIBCO, Inc. 384 F.3d 822, 833 (9th Cir. ,2004) (equating physical inability to work to removal from labor market). Plaintiff does not dispute that in or around May 2007, she suffered a broken hand and wrist, and that this injury prevented her from performing certain types of employment and caused her to stop looking for certain types of jobs. (PSOF, p.7, ¶¶45,46). The Court cannot grant summary judgement on this matter, however, as it is not clear which types of jobs Plaintiff stopped looking for, and whether she was still able to accept suitable employment.

Because Plaintiff did not voluntarily remove herself from the labor market, the more pertinent question, then, is whether her search for work during the period of self-employment was reasonably diligent. Defendant alleges that Ms. Cassella effectively terminated any and all job searches in mid-2006 and, as a result, has not conducted a reasonably diligent job search. This contention appears to be supported by the record. Ms. Cassella stated that beginning in the second half of 2006 she only visited DES, her primary job search resource, once a month, and that she could not recall having visited DES during 2007 or 2008, and as of August, she'd only made two visits in 2009. The only other job search-related activity Plaintiff engaged in during 2007 was calling an acquaintance to inquire about how to get a job with Walmart. When, however, this acquaintance told Plaintiff that Walmart had over 1,500 application already on file, Plaintiff elected not to apply for a position. During this time period Plaintiff also attempted to attract more clients for her horse-training business. The Court cannot, however, construe Plaintiff's solicitation of extra clients for her business as a job-search activity. Furthermore, the facts show that Plaintiff's job as a horse trainer

took up eight hours on most days, and, on top of that, she was spending one to two hours per day taking care of her mother until August 2007. With such a schedule, it is understandable Plaintiff would have little time to search for substantially equivalent employment, but it does not excuse her from that responsibility. This Court finds, beginning in January 2007, the time she stopped frequenting DES, Plaintiff failed to mitigate her damages by seeking suitable employment with reasonable diligence. Therefore, should Defendant prove at trial that substantially equivalent jobs were available between January 2007 to the present, Plaintiff will not be entitled to recover backpay during this period. As for 2006, the jury, not this court, will decide whether Plaintiff exercised reasonable diligence during that period of time.

**2.     Damage Cap**

Pursuant to 42 U.S.C. § 1981a(b)(3), compensatory damages in employment discrimination cases are capped based on the number of persons employed by the defendant. Based on this section, Defendant argues that Plaintiff's damages must be limited to $50,000 because at the time it terminated Plaintiff, Mineral Park had 59 employees. If, in fact, Defendant is correct about the number of persons in its employ at the relevant time[1], $50,000 is the proper cap on compensatory damages. See 42 U.S.C. § 1981a(b)(3). ("in the case of a respondent who has more than 14 and fewer than 101 employees in each of 20 or more

---

[1] For the purposes of Section 1981's damage cap, Defendant argues that the date of Ms. Cassella's termination is the relevant time for accessing how many persons Mineral Park employed. In support of its assertion, Defendant cites Hennessy v. Penril, 69 F.3d 1344, 1355–56 (9th Cir. 2009). Defendant's reliance on this case, however, is misplaced, as Hennessy did not specifically address what the relevant period of time for determining the size of a company is under Section 1981. Instead, it merely noted that a trial witness testified as to the size of the defendant-company at the approximate time the plaintiff was fired. Id. at 1355. The Court, therefore, is skeptical of Defendant's assertion, as the plain language of Section § 1981a(b) clearly predicates the damage cap on the number of person employed during the "current or preceding calendar year," not the time of the plaintiff's termination. Accordingly, this Court reserves judgement on this issue until such time as the Parties can further brief the Court, such as in proposed jury instructions.

calendar weeks in the current or preceding calendar year, $50,000 "). The veracity of its claim, however, is for a jury, not this Court to decide.

While this Court does not agree with Plaintiff that Defendant has waived its right to invoke the statutory damages cap, it does agree that Defendant has not met its burden concerning the number of Mineral Park employees. Defendant, as movant, bears the initial burden of establishing the absence of any genuine issue of material fact concerning the number of persons in its employ, and must identify those portions of the record that it believes demonstrate the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986); Devereaux v. Abbey, 263 F.3d 1070, 1076 (9th Cir. 2001). In its motion, Defendant simply states, without citation to any part of the record, that Mineral Park employed 59 people when it fired Plaintiff. As part of its response and in an exhibit attached with its Supplemental Statement of Facts, Defendant, for the first time, produced a Declaration by Barb Bechstein, in which she states that Mineral Park employed 59 persons at the time it fired Plaintiff. Because Defendant produced this document as part of its response, Plaintiff has not had an opportunity to address or respond to the assertions therein. Additionally, Ms. Bechstein's declaration is undated and unsigned, and in its Supplemental Statement of Facts, Defendant refers to the Declaration of Jim Tompkins in support of its contention that Mineral Park employed 59 persons, but cites to exhibit 14, which is Barb Bechstein's declaration. It appears, then, that Defendant may not have even intended to submit or rely on Ms. Bechstein's declaration, but did so by mistake. In sum, the Court cannot find Defendant met its burden based solely upon an unsigned declaration, on which it might not have even meant to rely, and to which Plaintiff has not had an opportunity to respond.

///

1  **Accordingly,**

2  **IT IS HEREBY ORDERED** granting in part Defendant's Motion for Partial
3  Judgement by holding that Plaintiff did not search for suitable employment with reasonable
4  diligence after January 1, 2007. (Dkt. #75).

5  **IT IS FURTHER ORDERED** denying Defendant's Motion for Partial Judgement
6  as to all of the other elements of its claims. (Dkt. #75).

7  **IT IS FURTHER ORDERED** denying Defendant's Motion for Partial Summary
8  Judgement concerning a compensatory damage cap pursuant to 42 U.S.C. § 1981a(b)(3).
9  (Dkt. #75).

10  **IT IS FURTHER ORDERED** denying Plaintiff's Motion to Strike. (Dkt. #78).

11  DATED this 8th day of February, 2010.

_____
Mary H. Murguia
United States District Judge